IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN M. JOHNSON, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | C.A. NO. 3:16-cv-01933-L-BF |
| | § | |
| | § | |
| WILLIAM DRAKE, | § | |
| Respondent. | § | |
| | § | |

## DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVELY TO TRANSFER VENUE

**TO THE HONORABLE COURT:**

Defendant, William Drake ("Mr. Drake"), submits his Motions to Dismiss based on lack personal jurisdiction, res judicata, Federal Rule of Civil Procedure Rule 41's "double dismissal" rule, improper venue, and improper service. Alternatively, should the court not dismiss, the case should be transferred to the proper venue.

That the United States District Court for the Northern District of Texas does not have personal jurisdiction over Mr. Drake as determined by Judge McBryde on November 25, 2014. *Steven M. Johnson P.C. v. Drake*, 4:14 cv 611-A, Doc. 21, p.1. Plaintiff has not alleged any facts that could alter that ruling. This case was filed in bad faith in another attempt to forum shop and purposefully evade other courts, including Judge McBryde's. Respectfully, this case is improperly before this Court and should be dismissed.

**Table of Contents**

Table of Contents ..............................................................................................2

Table of Authorities .........................................................................................3

Factual Background ..........................................................................................5

Argument and Authorities

      I.      This Court Lacks Personal Jurisdiction Over Mr. Drake.......................12

      II.     Res Judicata Bars Religiation of This Issue.............................................16

      III.    Federal Rule of Civil Procedure 41 bars this suit because Plaintiff
             has twice Dismissed Cases Against Mr. Drake......................................17

      IV.    The Northern District of Texas is Not the Proper Venue.....................19

      V.     Insufficient Service of Process................................................................ 22

      VI.    Costs...................................................................................................... 23

Conclusion .......................................................................................................24

Certificate of Service .......................................................................................26

<u>**Table of Authorities**</u>

Cases

*Am. Cyanamid Co. v. McGhee,*
   317 F.2d 295 (5th Cir. 1963) ................................................................................................ 20

*American Surity Co. v. Baldwin,*
   287 U.S. 156 (1932) ............................................................................................................. 18

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,*
   134 S. Ct. 568 (2013) ........................................................................................................... 23

*Avocent Hunstville Corp. v. Aten Int'l Co.,*
   552 F.3d 1324 (Fed. Cir. 2008) ........................................................................................... 14

*Baldwin v. Traveling Men's Assn.,*
   283 U.S. 522 (1931) ............................................................................................................. 18

*Commonwealth Coatings Corp. v. Cont'l Cas, Co.,*
   393 U.S. 145 (1968) ............................................................................................................. 12

*Corea v. Bilek,*
   362 S.W.3d 820 (Tex. App. 2012) ........................................................................................ 19

*Costantini v. Trans World Airlines,*
   681 F.2d 1199 (9th Cir.1982) ............................................................................................... 20

*Duchardt v. Ewing,*
   571 F.2d 869 (5th Cir. 1978) ................................................................................................ 26

*Electrosource, Inc. v. Horizon Battery Technologies, Ltd.,*
   176 F.3d 867 (5th Cir. 1999) .......................................................................................... 14, 15

*Fretz v. Reynolds,*
   No. 04-03-00854-CV, 2004 WL 2803201, 2004 Tex.App. LEXIS 11014, at *2-*3 (Tex.App.-
   San Antonio Dec. 8, 2004, pet. denied) ............................................................................... 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984) ............................................................................................................. 15

*In re 24R, Inc.,*
   324 S.W.3d 564 (Tex. 2010) ................................................................................................ 16

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
   456 U.S. 694 (1982) ........................................................................................................ 18, 19

*International Shoe Co. v. Washington,*
   *supra,* 326 U.S. 310 (1945) ................................................................................................. 14

*Jones v. Petty-Ray Geophysical Geosource, Inc.,*
   954 F.2d 1061 (5th Cir. 1992) ................................................................. 16

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770 (1984) .............................................................................. 14

*McClintock v. Sch. Bd. E. Feliciana Parish,*
   299 F. App'x 363 (5th Cir. 2008) ...................................................... 23, 24

*McGee v. International Life Insurance Co.,*
   355 U.S. 220 (1957) .............................................................................. 14

*Melamed v. Blue Cross of California,*
   557 F. App'x 659 (9th Cir. 2014) .......................................................... 20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Randall,*
   110 F.R.D. 499 (E.D. Cal. 1986) .......................................................... 20

*Wilson v. Belin,*
   20 F.3d 644 (5th Cir. 1995) .................................................................. 14

Statutes

28 U.S.C. § 1391 ................................................................................... 23
§1391(b) .............................................................................................. 23

Rules

Fed. R. Civ. P. 4 .................................................................................. 25
Fed. R. Civ. P. 41(a)(B) ........................................................................ 20
Fed. R. Civ. P. 41(d) ....................................................................... 25, 26
Fed. R. Civ. P. 41(d)(1) ........................................................................ 26
Federal Rule of Civil Procedure 12(b)(5) ............................................... 24

**FACTUAL BACKGROUND**

This case arises from the few months in 2012 that Plaintiff Steven M. Johnson, PC ("Plaintiff") through his law firm Johnson Law Firm ("JLF") represented Mr. Drake concerning Mr. Drake's DePuy ASR hip replacement prosthetic. Given the large number of related cases arising from the DePuy ASR device, the United States Judicial Panel on Multi-District Litigation ("MDL") ordered the cases centralized in the Northern District of Ohio on December 7, 2010- *In re DePuy Orthopeadics, Inc.* N. D. Ohio, 1:10-md-02197.

**1.  A Fort Worth Attorney Lures in a Minnesota Client.**

Mr. Drake is a Minnesota resident of 41 years, and aside from an airport layover, has never been to Texas. (Exhibit A, Transcript: 649-650). Mr. Drake required hip replacements in 2007 and was implanted with bilateral DePuy ASR prosthesis at Woodwinds Hospital in Woodbury, Minnesota. (Exhibit B, File, 24-27).  At some point, Andrea Drake saw some type of advertisement for a lawsuit involving the DePuy ASR device from their home in Minnesota. (Exhibit A, Page 650; 741). Mrs. Drake called the number from the advertisement from her home in Minnesota. She did not know where the "800" number she called was located. Mr. Drake's hips were unrevised at this time. (Exhibit A, 663).

For the next year a half, the Drakes received numerous advertisements and phone calls from JLF at their home in Minnesota. (See Ex. C, Pre-contract Contacts).  Mr. Drake repeatedly told JLF he was experiencing no recall-related problems, however, JLF continued to call the Drakes in Minnesota approximately once a week for a year and a

half. (Id.) JLF contacted the Drake over 55 times before sending a "contact" letter in early

2012. (Id). The contact letter stated, "**Failing to contact us may result in the the** (sic)

**closing of your file and the loss of your rights**." (See Ex. D, Contact Letter) (emphasis

original). That lead Mr. Drake to believe his time to bring a claim was running out, even

though he had not been revised,[1] Mr. Drake signed and returned the Representation

Agreement in late January 2012. (Ex. A, 643-654; Exhibit B, p. 2)).

## 2.    JLF does little to no work on the case and the Drakes become unhappy.

JLF represented Mr. Drake for the next several months. However, the constant calls

and contacts diminished greatly, and little work was performed. The JLF staff ordered

four pages of medical records, totaling $34.09 in expenses. (See Ex. B). Mr. Drake's entire

file is thirty-four pages of mostly repetitive documents. (See Ex. B).

In fall of 2012, Mr. Drake learned that his time limit to bring a claim was not

running out in when he received the contact letter, and he then distrusted JLF and was

displeased by the manner through which he had been made a client. (Ex. A 661-662). The

Drakes were also displeased with rude staff and dropped calls. (Ex. A 659, 660, 661). Mr.

Drake described his interactions with JLF:

> ". . . But the bottom line is, I called, because I had called, and I really wanted to get
> a response from the Johnson Law Firm. And I talked to the receptionist about the
> lack of response and she was quite possibly the most rude, condescending person I
> have talked to, pretty much intimating that they were too busy to call me back,
> and they would when they have time . . ."

(See Deposition, Ex. O 88:12-89:4)

---

[1] The revision of the defective implant is widely held to be the date of injury, when the statute of limitations would
begin to run. An alternative date would be the date of recall which was not in danger in this case.

Steven M. Johnson never spoke to the Drakes during the representation. (Ex. A, 242, 462).

In fact, no attorney from the firm did. (Id.)

> **3.**    **The Drakes fired JLF, so JLF filed a case on Mr. Drake's behalf in the MDL, and they did not tell him.**

The Drakes called JLF to discuss their concerns about the statute of limitations and

the representation, but they were met with threats instead of assurances of good faith.:

> "… when this [employee of JLF] called me back, he basically told me I had no right to let him go. This was Texas, and it's different here. I said, I'm willing to pay any expenses you've incurred. He says, it does work like that. And he was also rude and condescending, like I was totally ignorant of Texas law and I should know better. And that's when I was sure that we were done with the Johnson Law Firm.

(Id).

The JLF staff person is referring to a provision of the Representation Agreement

that JLF   eventually would seek to enforce against Mr. Drake. However, there is no

contractual provision concerning client termination, nor is there a requirement that a

client must have "good cause" to terminate or be liable for the full contingent fee

recovered.   JLF relies on an undisclosed clauses and its interpretation of Texas law to

recover from a lay-person in a foreign jurisdiction. (See Exhibit B, p. 2)   JLF never

informed Mr. Drake that he would be required to pay 40% of his entire fee recovery if

Mr. Drake, fired Mr. Johnson without good cause. (Ex. A, 654-655). JLF  never informed

Mr. Drake of this undisclosed contractual provision or explained good casue.

Instead of an attorney calling the Drakes to explain or address their concerns, a  a

JLF paralegal prepared and  filed a lawsuit in the MDL on Mr. Drake's behalf without

advising him that was happening and without the attorney reviewing the complaint. (Ex.

A, 661-662). Steven M. Johnson, JLF's only attorney, admits he may not have represented

Mr. Drake when the lawsuit was filed.

> Q: Well, when [Drake] first raised [his issues with representation] with you on the
> 20th of November, or at least his wife raised the issue to you, he wasn't represented
> at that point, correct?
> A: She was seeking counsel from a lawyer, and think that makes her represented
> by him.
> Q: Okay. But you file the case two days letter?
> A: Yes.

(EX. A, Page 408).  JLF did not inform Mr. Drake it filed a case on his behalf, and did not

send his file to his then Minnesota attorney until more than six weeks had past.  At the

time of the termination Mr. Drake had not had his revision surgeries or suffered any of

the debilitating effects and extra surgeries that were to come.

 4. **The Drakes find counsel and JLF demands 40% of any sums recovered.**

 In early 2013, the Drakes hired Meshbesher & Spence, a Minnesota firm,  to

represent them. Meshbesher & Spence complied with all discovery deadlines and

additional requirements for Mr. Drake

 Johnson filed many clients into the MDL. (Ex. A 406). Johnson also participated in

the Master Settlement Agreement ("MSA").  The MSA has several applicable provisions

including:

> Notwithstanding provisions to the contrary, **to the extent any suit, action or
> proceeding by either Party or any Person with respect to such matter under this
> Section 14.1 may be instituted, it must be instituted in <u>(and only in)</u> the MDL
> Court** (and appellate courts for the foregoing).

(See Ex. E).

After Meshbesher & Spence became aware of JLF's prior representation when DePuy's counsel contacted them having noticed two suits were filed for Mr. Drake, Meshbesher & Spence contacted JLF to get its suit dismissed.  JLF informed Meshbesher & Spence it would seek its 40% contingent fee and its dismissal asserted attorney's fees in the case.

With settlement approaching, Tony Nemo from Meshbesher & Spence suggested getting a Special Master involved in the fee dispute. (Ex. F). . November 13, 2013 a settlement was announced for those who had been revised by the date of the settlement ("Round One Settlement"). Meshbesher & Spence processed the settlement with the Drake's and did all substantive work on the case. (Ex. A, 673). Meshbesher & Spence also processed the second settlement ("Round Two Settlement") as well.

**5.    JLF files suit in Texas to compel arbitration, and it is dismissed for want of personal jurisdiction.**

 Rather than proceed before a special master in accordance with the MSA, JLF needlessly initiated two separate actions – one in the United States District Court, Northern District of Texas- Fort Worth Division (with Judge McBryde) (Ex. G) and one with Dallas JAMS.  In all, JLF initiated federal actions against five former clients who had fired the firm. (Ex. H).  Despite the MSA provisions that bound JLF to bring any dispute in front of the MDL, Johnson evaded the MDL and commenced these separate actions.

Judge McBryde *sua sponte* found that subject matter jurisdiction did not exist in one of those five cases, because JLF could not reasonably argue the amount in

controversy exceeded $75,000.00. (Ex. I). Presumably, this caused JLF to amend its pleadings. (Ex. J). Drake, through his counsel, brought a motion to dismiss for lack of personal jurisdiction among other arguments. (Ex. K). Judge McBryde found there was no personal jurisdiction. (See Order, Exhibit L). Plaintiff appealed the decision, but ultimately voluntarily dismissed it. (See Ex. U).

6.      **Drake was forced under protest to participate in the JAMS arbitration.**

Despite the finding that the Northern District of Texas did not have jurisdiction, and despite a different arbitrator finding that there was no jurisdiction in another of JLF's suit against a former client in JAMS, the Arbitrator retained Mr. Drake's case.   Mr. Drake repeatedly and consistently stated his objections to the proceedings and participated only to protect his interests.   Mr. Drake participated via phone from Minnesota in the Dallas JAMS in order to avoid default judgment, but always maintained that the MDL was the proper venue for the dispute.

In early 2016, JLF brought a second federal petition seeking to compel arbitration, this time in the Dallas Division of the Northern District of Texas. (Ex. Q).  JLF's counsel failed to properly notify the court of the prior  related action. (Ex. R). The Court requested clarification on jurisdiction as JLF also failed to properly allege personal jurisdiction. (Ex. S). Ultimately, Johnson voluntarily dismissed that claim. (Ex. T).

During the course of arbitration, it was discovered that a necessary and required disclosure was never made. (Ex. V). Neither Johnson nor the Arbitrator ever disclosed that Johnson was party to another, existing arbitration that the Arbitrator was hearing. (Id).

Plaintiff immediately objected and requested withdrawal as Texas law holds non-disclosure itself establishes partiality.[2] (Id). At the opening of arbitration, Drake, again requested remedy for the non-disclosure. In response, the Arbitrator put on the record the following:

> "Well, look, my belief is that these issues of disclosure are not findings of fact that I'm going to make. I mean, you can make a record of it, and then if – if the case goes to a confirmation hearing and it is the basis or a challenge for vacatur, I assume some trial judge will address all of those issues. I'm not here to rule on those and not here to testify about them or make any decisions . . ."

(See Ex. A, 10)

### 7. Mr. Drake moves the MDL court to vacate the arbitration decision.

The JAMS arbitration continued despite these grave and serious concerns. The JAMS Arbitrator awarded Johnson his full 40% contingency fee amount to over $196,612.50, and $136,457.00 in attorney's fees in prosecution of the claim, an award that stuns the conscious of any reasonable individual. (Ex. N).

On Mr. Drake's counsel petitioned the MDL to vacate the arbitration award, asserting that the dispute should have always been brought in front of the MDL, but also that the failure to disclose is evidence of partiality. (See Declaration of Ashleigh Raso). JLF

---

[2] Mr. Drake pointed out to the Arbitrator the following case law:

[W]e hold that a prospective neutral arbitrator selected by the parties or their representatives exhibits evident partiality if he or she **does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality. Plaintiff emphasizes that this evident partiality** is established from the nondisclosure itself regardless of **whether the non-disclosed information necessarily establishes partiality or bias**.

*See Commonwealth Coatings Corp. v. Cont'l Cas, Co.*, 393 U.S. 145, 147 (1968) (emphasis added) (finding evident partiality based on arbitrator's failure to disclose conflict, even though there was no evidence of actual bias).

was properly served with the Motion to Vacate, but, instead of addressing the issue in a court with jurisdiction, it improperly filed this action.

None  of the above facts change the fact the Mr. Drake has never even been to Texas, has no contacts with Texas, has not personally availed himself of Texas's protections, and there is no personal jurisdiction over him here.  Judge McBryde's ruling still stands. Respectfully, this Court does not have jurisdiction and Defendant respectfully requests a dismissal.

## ARGUMENTS

### I.      This Court Lacks Personal Jurisdiction Over Mr. Drake

Plaintiff has done nothing to cure the fatal deficiency underpinning their previous two dismissals- the lack of personal jurisdiction. When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden to prove the existence of personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1995). As the Texas Long-arm statute comports with the minimum due process requirements, the court looks to whether the defendant has established "minimum contacts" with Texas sufficient for a court to have jurisdiction. *International Shoe Co. v. Washington, supra*, 326 U.S. 310, 326 (1945). Minimum contacts may be satisfied by finding "specific" or "general" jurisdiction. *Avocent Hunstville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008).

Plaintiff cannot establish that Mr. Drake (1) purposefully availed himself of the forum state or should reasonably anticipate being hauled into court in the forum state;

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.286, 297 (1980), or (2) "purposefully directed" his activities at residents of the forum; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), or (3) *himself* created a substantial connection with the forum State. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223 (1957).

It was the Johnson Law Firm that reached out to Mr. Drake in Minnesota through its advertisement. The unilateral activity of Plaintiff's advertisement and mailing cannot establish minimum contacts for Mr. Drake. *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.,* 176 F.3d 867, 872 (5th Cir. 1999). When Mrs. Drake called the number on the screen, she did not know where the law firm was located.  See Declaration of Andrea Drake.  Mr. Drake signed the Representation Agreement in Minnesota, not Texas.  And a contract alone does not establish minimum contacts. *Id.* (Corporate defendant "sent several employees and documentation to Texas during the extensive negotiations of the Agreement" supporting the assertion of *in personam* jurisdiction.")   Mr. Drake was implanted with the affected product in Minnesota and was revised and re-revised in Minnesota. Mr. Drake's actions related to the subject matter before this Court cannot be said to have created a substantial connection with Texas such that he was apprised that he could be "hauled into" Texas. *Id.* Mr. Drake made no Texas visits to negotiate the Representation Agreement.  Mr. Drake did not "purposefully" direct his actions to Mr. Steven Johnson or Texas. It was Plaintiff who purposefully directed his advertisement, mail, and phone calls to Minnesota

13

In addition, Plaintiff cannot establish general jurisdiction as Mr. Drake's "contacts with the forum are [not] sufficiently continuous and systematic as to support the reasonable exercise of jurisdiction," in fact they are *de minimus* at best. *See, e.g. Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984).  Given that this analysis is more demanding than specific jurisdiction, requiring a showing of substantial activities, an airport layover, Mr. Drake's only time in Texas, is insufficient.  See *Jones v. Petty-Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir. 1992), *cert. denied,* 506 U.S. 867.

Even if the arbitration clause survived lawful termination, Mr. Drake would not be expected to be hauled into court in Texas. The Representation Fee Agreement does not and could not assign personal jurisdiction in a Texas court of law because of the unilateral nature of the arbitration clause; the Law Firm can "release themselves from [the] contract," but Mr. Drake is apparently not afforded such an option.  *In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex. 2010).  Assuming Texas law applies, an arbitration clause is illusory if one party can "avoid its promise to arbitrate by amending the provision or terminating it altogether." *Id.*

Even if some fact indicated that Mr. Drake had some minimum contacts with Texas, exercising personal jurisdiction over him does not comport with the traditional notions of fair play and substantial justice. The burden on Mr. Drake, to be forced to defend himself in Texas, a forum in which he has never even been, regarding  a contract he signed and terminated in Minnesota, is great compared to any burden Plaintiff may encounter if it has to proceed outside of Texas.

14

Plaintiff, a Law Firm, made purposeful availments all across the United States to injured individuals like Mr. Drake. Such action may subject them to personal jurisdiction in the various jurisdictions where they attempt to solicit clients; however, such jurisdiction does not operate likewise for the clients they seek to solicit. Potential clients do not suddenly obtain personal jurisdiction in the state of Texas because they have received mail from a law firm in Texas. Plaintiff reached into Minnesota to collect clients, it is not burdened if it must pursue its alleged claim against a Minnesota client outside of Texas. Plaintiff should expect to be hauled into foreign courts from which he solicits business.

In addition, JLF  purposefully availed itself of the MDL, the proper court to bring its  motion and where a motion to vacate on the same issues presently sits. The MDL has jurisdiction and JLF  agreed to it when it filed suit on Mr. Drake's behalf in the MDL and participated in the MSA:

> [Party]**Consents and submits, for itself and its property to the jurisdiction of the MDL Court** . . . for the purpose of any suit, action or proceeding instituted against it pursuant to this Section 14.1.15 . . .

Article 14.1.5.3. (Emphasis added).

This court lacked personal jurisdiction over Defendant when Plaintiff filed its first complaint, which the court acknowledged in the order dismissing Plaintiff's claim. This court did not gain jurisdiction over Defendant through Plaintiff's bald assertions in their second claim, which it  subsequently dismissed. This Court does not have personal jurisdiction now. Plaintiff cannot meet its burden to establish this Court's jurisdiction

over Mr. Drake; therefore, the Application for Order Confirming Domestic Arbitration

Award must be dismissed for lack of personal jurisdiction.

## II.        Res Judicata Bars Relitigation of this Cause of Action.

Defendant was found to lack the minimum contacts necessary to find Texas had

personal jurisdiction. This matter was adjudicated. As a matter of common law, *res

judicata* bars re-litigation of causes of action already brought before the court. See

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

Although issues specific to a cause of action are generally governed by collateral estoppel

and not *res judicata*, personal jurisdiction is different. The Supreme Court has held that a

decision on personal jurisdiction will be *res judicata* on that issue in any further legal

proceedings. *Id.* This means that once personal jurisdiction has been adjudicated as to a

specific cause of action it is determined for all future proceedings involving that cause of

action, in that jurisdiction. In *Insurance Corp. of Ireland*, the defendant sought to relitigate

the issue of personal jurisdiction is subsequent proceedings after it had already been

determined that there was personal jurisdiction, the Supreme Court bluntly stated that;

> By submitting to the jurisdiction of the court for the limited purpose of challenging
> jurisdiction, the defendant agrees to abide by the court's determination on the
> issue of jurisdiction: That decision will be res judicata on the issue in any further
> proceedings.

*Id.* (Citing *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522 (1931)); See also, *American Surity

Co. v. Baldwin*, 287 U.S. 156, 166 (1932).

In *Valdez v. Kreso, Inc.*, the court found that the attorney who filed a second complaint against the defendant "ignored the rule of long standing "that principles of *res judicata* apply to jurisdictional determinations- both subject matter and personal." 144 F. Supp.2d 633, 667 (N.D. Tex 2001) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).   In addition to the *Valdez* case, Texas courts have previously held that dismissing a case for lack of personal jurisdiction precludes relitigation of the jurisdictional issues that were actually litigated and essential to the dismissal. *Corea v. Bilek*, 362 S.W.3d 820, 827 (Tex. App. 2012); See *Fretz v. Reynolds*, No. 04–03–00854–CV, 2004 WL 2803201, *1, 2004 Tex.App. LEXIS 11014, at *2– *3 (Tex.App.-San Antonio Dec. 8, 2004, pet. denied).

Mr. Drake has challenged the personal jurisdiction of the United States District Court for the Northern District of Texas and as a matter of *res judicata* it was fully adjudicated that this court lacks personal jurisdiction of Mr. Drake.  Because it has already been determined by the United States District Court for the Northern District of Texas that this court cannot exercise personal jurisdiction over Mr. Drake *res judicata* bars further litigation on the same issue.

### III.   Federal Rule of Civil Procedure 41 bars this suit because Plaintiff has twice dismissed cases against Mr. Drake.

Plaintiff's claims against Mr. Drake have been adjudicated twice already in the Northern District of Texas. (See Ex. T, U.) Federal Rule of Civil Procedure 41 governs the effect of dismissing a claim. If a claim is voluntarily dismissed by the

Plaintiff in an action more than once the action is deemed to be fully adjudicated. See Fed. R. Civ. P. 41(a)(B).

Plaintiff's first attempt to enforce their arbitration was dismissed for lack of personal jurisdiction. (See Ex. L). On November 25, 2014, Judge McBryde ruled that personal jurisdiction was "so clearly absent", that it  could decide Defendant's motion to dismiss on that matter alone. (See Ex. L at 1 n1). Plaintiff appealed that decision to the Fifth Circuit Court of Appeals, but then voluntarily dismissed the action. (Ex. U).  In February 2016, Plaintiff brought a second action in the Dallas division, which it voluntarily in March 2016.  (Ex. T).

Where, as here, a plaintiff files a third action that he twice voluntarily dismissed, involving the same underlying facts, the plaintiff's case should be dismissed under the two dismissal rule. *See Melamed v. Blue Cross of California*, 557 F. App'x 659, 662 (9th Cir. 2014) (citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982). The purpose of Fed. R. Civ. P. 41 is to prevent unreasonable abuse and harassment by Plaintiff who may otherwise continue to dismiss and refile their complaints. *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 298 n3 (5th Cir. 1963)(citing Moore's Federal Practice, Vol. 5, Sec. 41.04, page 1014). Although the court may look at the bad faith of the parties in deciding to rule on the "two dismissal" rule, bad faith is not required. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Randall*, 110 F.R.D. 499, 500 (E.D. Cal. 1986) (court holding that hearing on bad faith or intent to harass was not required where plaintiff twice voluntarily dismissed their complaints).

Although a bad faith showing is not required, it is present here. Three complaints have been filed against Mr. Drake, a Minnesota resident. Plaintiff has completely disregarded Judge McBryde's ruling and order, and then went a step further to avoid Judge McBryde's court by filing in Dallas rather than Fort Worth. This behavior his harassing under this rule and Plaintiff is bared from bringing this complaint.

### IV.     The Northern District of Texas is Not the Proper Venue

The Northern District of Texas is not the proper venue for this dispute. Even if the contract could confer personal jurisdiction, which it cannot, the proper venue would be the MDL, where a proper motion concerning the issues present by Plaintiff in this case was already pending. The contract states that the matter will be heard by an "arbitrator that The Firm may **choose** . . ." The Firm chose its arbitrator (an MDL special master) when it filed Mr. Drake's case in the MDL, sought recovery money Mr. Drake received by virtue of the MSA, participated in the MSA and submitted to the Jurisdiction of the MDL's Special Masters and arbitrators. (See Ex. B, p2, and Ex. E).

> <u>**Submission to Authority to Claims Administrator and Special Masters**</u>
> Each Party and, by submitting an Enrollment Form and Release, each Enrolling U.S. program Claimant and **Enrolling Counsel**, **agrees that authority over the process contemplated by the U.S. program**, including any Claims submitted under the U.S. Program, **resides with those Persons appointed pursuant to this Agreement to exercise that authority, as such authority is specified in this Agreement and that the Claims Administrator, Claims Processor and Special Masters** in making the determinations with respect to claims submitted to the U.S. program do so with the authority of Arbitrators under the Federal Arbitration Act and their decision … are final, binding, and Non-Appealable.

Article 14, Section 14.1 (emphasis added).

Except as specifically provided in this Agreement, **any dispute that arises under or otherwise in connection with (i) this Agreement and/or any U.S. Program Claim** and/or (ii) any other Administrative Agreement under which disputes are agreed to be handled in the manner set forth in this Article 14, **shall be submitted to the Claims Administrator who shall sit as a binding arbitration panel** and whose decision shall be final, binding and Non-Appealable . . .

Article 14.1.2 (emphasis added).

Notwithstanding provisions to the contrary, **to the extent any suit, action or proceeding by either Party or any Person with respect to such matter under this Section 14.1 may be instituted, it must be instituted in (and only in)** the MDL Court (and appellate courts for the foregoing). Each Party or Persons hereby:

**Consents and submits, for itself and its property to the jurisdiction of the MDL Court . . . for the purpose of any suit, action or proceeding instituted against it pursuant to this Section 14.1.15** . . .

**Waives any objection which it or he may now or hereafter have to the laying of venue of any suit, action or proceeding pursuant to this Section 14.1.5 brought in any court specified above in this Section 14.1.5, waves any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum, and agrees not to plead or claim either of the forgoing** . . .

Section 14.1.5, 14.1.5.1-3, See Ex. E (emphasis added).

This has been the position of Defendant since the first Motion to Dismiss, during the arbitration, and now. If, for sake of argument, the contract did somehow confer personal jurisdiction and the jurisdiction was not the MDL, the contract calls for jurisdiction in Tarrant County. Yet, Johnson has twice now attempted to evade the Fort Worth Division and Judge McBryde, who already ruled there is no personal jurisdiction over Mr. Drake.

Regardless, even without the MSA, the MDL would still be the proper venue for this action. Whether venue is improper is governed by 28 U.S.C. § 1391. A civil action may be brought in

> "(1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." §1391(b).

"Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories as listed in § 1391(b)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013) Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial. *McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008).

Venue is improper in this District foremost because Drake does not reside in the jurisdiction. Second, none of the events or omissions giving rise to the claim occurred in the Northern District of Texas. The defective product was sold to a Minnesota doctor who surgically implanted it in Minnesota, into a Minnesota resident. The Drakes saw the advertisement for the Johnson Law Firm in Minnesota. Drake signed the contract in Minnesota and terminated the contract from Minnesota. Plaintiff filed Mr. Drake's case in Ohio in the pending MDL, not in Texas.  Finally, as argued above, there is no personal jurisdiction over Drake.  If venue is not proper, the case must be dismissed or transfer

under §1406(a).  For these reasons stated, the Court should grant the motion to dismiss for lack of venue as there is no harm or prejudice cited by Plaintiff from dismissal. In the alternatively, the case should be transfered the case to the MDL to be heard with Mr. Drake's pending motion.

### V.  Insufficient Service of Process

Defendant asserts that Plaintiff failed to effectively serve Defendant in this lawsuit and raises the defense of "insufficient service of process" under Federal Rule of Civil Procedure 12(b)(5). A process server attempted to serve the Drakes with this action. Ms. Drake heard her doorbell ring on July 20, 2016, (See Declaration of Andrea Drake). She ignored the doorbell because she was not expecting anyone. (Id.) The doorbell persisted and Mrs. Drake went to the door thinking it may be a neighbor child selling something. (Id.)  She opened the interior door and a man stood, opening the screen door. (Id.) Mrs. Drake did not recognize him so she closed the door and locked it immediately. (Id.) She was frightened as she was home alone. (Id.) Mrs. Drake did not exchange words with the man. (Id.) After he left she noticed he left an envelope at the door step. (Id.)  It was left there until Mr. Drake got home. (Id.)

Service of process is a necessary procedural hurdle that Plaintiffs must clear before they can commence a lawsuit. Generally for service to be effective a complaint must be attached to the summons and these documents must be left with a person of suitable age at the defendant's usual place of abode, or delivering a copy to a personal authorized to act as defendant's agent, or by handing the document the defendant personally. See Fed.

R. Civ. P. 4. In this case Mr. Drake was not personally served, and no attempt was made to

verify that the address these documents were left at was his "abode". (See Declaration of

Andrea Drake). Rather, Plaintiff's process server merely knocked on the door, was met

with Mrs. Drake who immediately shut the door, not knowing the stranger and being

home alone, and left "papers" on the porch. The process server made no effort to

determine her relation, if any, to Defendant; and without verifying Defendant lived at the

address. These two elements make Plaintiff's attempt at service insufficient and this court

should therefore dismiss Plaintiff's complain.

## VII.    Costs

Plaintiff should also be required to pay back all of Defendant's costs for the

previously adjudicated matter which they voluntarily dismissed their claim. Fed. R. Civ.

P. 41(d) provides that:

> [I]f a plaintiff who previously dismissed an action in any court files an action
> based on or including the same claim against the same defendant, the court:
> 1)  May order the plaintiff to pay all or part of the costs of that previous action;

Fed. R. Civ. P. 41(d)(1). Due to the vexatious nature of this continued claim Plaintiff

should pay all of Defendant's costs from the previous litigation. The Fifth Circuit has

acknowledged that such costs are recoverable when the Plaintiff voluntarily dismisses the

previous litigation pursuant to Fed. R. Civ. P. 41. *Duchardt v. Ewing*, 571 F.2d 869, 870 (5th

Cir. 1978) ([Rule 41(d)] allows a court to require payment of the costs of a prior action as a

condition for maintaining subsequent action only if the plaintiff has dismissed the

previous action). Here, this court should tax the costs of the previous litigation in this case

due to continued lack of merit in Plaintiff's sole claim for attorney fees in this matter. Plaintiff has two separate court orders advising them that personal jurisdiction is lacking, fatally so. Nonetheless, Plaintiff has continued unabated and forced Defendant to incur costs. Therefore, this court should tax the following costs against Plaintiff for the previous litigation in which they voluntarily withdrew:

| 3/2/2016 | $29.87 | FedEx documents to local counsel |
|---|---|---|
| 3/2/2016 | $29.87 FedEx documents to local counsel | |
| 3/2/2016 | $29.87 | FedEx documents to local counsel |

These costs were all incurred as a result of Plaintiff's previously withdrawn complaint and this court should tax all of these costs against the Plaintiff.

## CONCLUSION

Respectfully, Plaintiff's Application for Order Confirming Domestic Arbitration Award must be dismissed. Plaintiff has not asserted any facts that would change the previous personal jurisdiction finding. The United States District Court, Northern District of Texas is has already found it does not have personal jurisdiction over Mr. Drake and the matter is *res judicata*. In addition, this Court is not the proper venue for this dispute. Defendant submitted to the jurisdiction of the MDL and that is the proper venue for this action. Plaintiff's claims should be barred by Rule 41 of the Federal Rules of Civil Procedure. Plaintiff also failed to effectively serve Defendant. Finally, Plaintiff's claims

24

also fail to state a compensable claim. Due to the repetitive nature of this litigation this court should impose the costs Defendant incurred as a result of the previous complaint Plaintiff filed and voluntarily dismissed regarding the same litigation. Accompanying this motion is a motion for sanctions. Respectfully, Defendant requests you grant the motion to dismiss.

Respectfully Submitted:

_____
**Ashleigh E. Raso**
Minnesota State Bar No. 0393353
E-mail: araso@meshbesher.com
Tel.    612.767.5123
**Meshbesher & Spence**
1616 Park Avenue
Minneapolis, Minnesota 55404

**Karin Cagle**
Texas State Bar No. 24043588
1619 Pennsylvania Avenue
Fort Worth, Texas 76104
E-mail:kcaglelaw@gmail.com
Tel.   817.721.5127

LAWYERS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I served this document on the Plaintiff's counsel of record, per the Federal Rules of Civil Procedure, as indicated below, on August 18, 2014.

_____

Ashleigh E. Raso

Via certified mail:
Jenny Andrews
Wallach & Andrews, P.C.
2501 Parkview Drive, Suite 303
Fort Worth, TX  76102